JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Cheryl Di Bona

## DEFENDANTS

CubeSmart, L.P.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Chester
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Caren N. Gurmankin, Esquire
Console Law Offices LLC
1525 Locust Street
9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government
Plaintiff
- ☒ 3  Federal Question
(U.S. Government Not a Party)
- ☐ 2  U.S. Government
Defendant
- ☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

Appeal to District
Judge from
Magistrate
Judgment

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §2000(e), et seq. ("Title VII"); 42 U.S.C. §1981 ("Section 1981")

Brief description of cause:
Plaintiff is alleging sex discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   n/a

JUDGE

DOCKET NUMBER

DATE

October 14, 2016

SIGNATURE OF ATTORNEY OF RECORD

Caren N. Gurmankin, Esquire

FOR OFFICE USE ONLY

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Cheryl DiBona | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| CubeSmart, L.P. | : | NO. |
| Defendant. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X)


| | | |
|---|---|---|
| Oct. 14, 2016 | _[signature]_ | Plaintiff, Cheryl DiBona |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (215) 545-7676 | (215) 565-2853 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT

APPENDIX F

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Cheryl DiBona, North Wales, PA 19454

Address of Defendant: CubeSmart, L.P., 5 Old Lancaster Road, Malvern, PA 19355

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☒

Does this case involve multidistrict litigation possibilities?    Yes☐   No☒
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Caren N. Gurmankin, Esquire_____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: Oct. 14, 2016 _____   _____   205900_____
                                        Attorney-at-Law                Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: Oct. 14, 2016 _____   _____   205900_____

Caren N. Gurmankin, Esquire

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHERYL DI BONA**<br>**North Wales, PA 19454** | **CIVIL ACTION NO.** |
| **Plaintiff,** | |
| **v.** | |
| **CUBESMART, L.P.**<br>**5 Old Lancaster Road**<br>**Malvern, PA 19355** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Cheryl Di Bona, brings this action against her former employer, CubeSmart, L.P. ("Defendant"). Defendant, a company that not only tolerated, but encouraged, discriminatory conduct at its highest levels, terminated Plaintiff, a high-performing, six (6) year employee, within just days of her complaining about Defendant's sex discriminatory conduct and race discriminatory conduct.

Defendant discriminated against Plaintiff based on her sex, and retaliated against her based on her complaints about the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Defendant also retaliated against Plaintiff based on her complaints

regarding its race discriminatory conduct in violation of 42 U.S.C. §1981

("Section 1981"), Title VII, and the PHRA.

## II.   PARTIES

1.      Plaintiff, Cheryl Di Bona, is an individual and a citizen of the

Commonwealth of Pennsylvania.

2.      Plaintiff is female.

3.      Defendant, CubeSmart, L.P. is a Delaware limited partnership with

a principal place of business at 5 Old Lancaster Road, Malvern, PA 19355.

4.      Defendant is engaged in an industry affecting interstate commerce

and regularly does business in the Commonwealth of Pennsylvania.

5.      At all times material hereto, Defendant employed more than fifteen

(15) employees.

6.      At all times material hereto, Defendant acted by and through its

authorized agents, servants, workmen, and/or employees acting within the

course and scope of their employment with Defendant and in furtherance of

Defendant's business.

7.      At all times material hereto, Defendant acted as an employer within

the meaning of the statutes which form the basis of this matter.

8.      At all times material hereto, Plaintiff was an employee of Defendant

within the meaning of the statutes which form the basis of this matter.

## III.   JURISDICTION AND VENUE

9.      The causes of action which form the basis of this matter arise under

Title VII, Section 1981, and the PHRA.

10.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

11.     The District Court has jurisdiction over Count II (Section 1981) pursuant to 28 U.S.C. §1331.

12.     The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

13.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

14.     On or about July 15, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination and retaliation alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

15.     On or about August 17, 2016, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of the notice (with personal identifying information redacted).

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   **FACTUAL ALLEGATIONS**

17.    Defendant hired Plaintiff into the position of Associate General Counsel, a director-level employee, on or about June 6, 2009.

18.    Throughout Plaintiff's employment, she reported to Jeff Foster (male), Chief Legal Officer and Senior Vice President.  Mr. Foster reported to Christopher Marr (male), Chief Executive Officer.

19.    At all times material hereto, Plaintiff performed her duties in a highly competent manner.  Examples of the same are set forth below.

20.    In around August 2010, then-CEO Dean Jernigan sent Plaintiff a letter stating that:

> As we've developed our systems, our people and our processes, the Board of Trustees and the entire senior management team believe that an important component of our company culture is to ensure we identify and reward our high-potential, top performers.
>
> I am pleased to inform you that you are one of the select members of the [CubeSmart] team to receive an award of Restricted Shares of our company.  The award recognizes your contributions to our company's success and management's belief that you will continue to be a key contributor to the team as you build your career with [CubeSmart].   As these awards were only granted to a few individuals, please use discretion when discussing your award with your co-workers.

21.    In about January 2012, Mr. Marr sent Plaintiff a letter stating that,

> CubeSmart recognizes that high potential, top performers achieve superior levels of performance, and exhibit behaviors that reflect the Company culture and values in an exemplary manner. Moreover, they show a strong capacity to grow and succeed.
>
> We are pleased to inform you that you are being recognized as a high potential, top performer and have been selected as a distinct member of the CubeSmart team to receive an award of Restricted Shares.   The award recognizes your contributions to our Company's success and management's belief that you will continue

to be a key contributor to the team as you build your career with CubeSmart.   As these awards were only granted to a few individuals, please use discretion when discussing your award with your co-workers.

22.    In around February 2014, Plaintiff received a note from Mr. Marr informing her that Defendant had awarded her a grant of restricted stock and stating that,

> You are part of a select group of five teammates at [Defendant] who the senior officer team decided to award equity at this time. You live our CubeSmart values and we believe you have a bright future.  This equity award is a tangible sign of our respect for your past performance and belief in your future.

23.    During Plaintiff's employment, and as set forth in detail below, Defendant tolerated a sexist corporate culture at its highest levels.  As also detailed below, Defendant failed to properly investigate or remedy Plaintiff's complaints about its discriminatory conduct, but, instead, retaliated against her based on the same.

24.    Defendant's demographics evidenced a bias against female employees.  Evidence of the same includes, but is not limited to, the following:

(a)    As of the time of Plaintiff's termination (in June 2015), the Senior Management team was entirely male;

(b)    All of the executives who reported directly to Mr. Marr were male;

(c)    All of the Senior Vice Presidents were male; and,

(d)    As of the time of Plaintiff's termination, all of the Vice Presidents were male.

25.    During Plaintiff's employment, Defendant, including its highest-level

executives, made sexual and sexist comments to Plaintiff and other female employees. Defendant's sex discriminatory comments and conduct included but was not limited to, the following:

      (a)    Mr. Foster said that a female manager's job was to wear a tight dress and look pretty at trade shows to get business for Defendant;

      (b)    During a meeting that Plaintiff was having with other (female) employees, Mr. Marr stopped by and started discussing celebrities, including commenting on the appearance of Cameron Diaz, an actress, and saying that she was "ridden hard and put away wet"

      (c)    Upon Plaintiff's information and belief, Mr. Marr told a female employee that he was surprised that she worked so well with Tim Martin (male), Chief Financial Officer, because of Mr. Martin's negative view of women;

      (d)    Upon Plaintiff's information and belief, Mr. Marr told a different female employee that Mr. Martin had a negative view of women;

      (e)    Mr. Foster said that the former (male) Chief Executive Officer could not keep an assistant because he liked to hire young, attractive women who did not know anything;

      (f)    A male Vice President, while looking Plaintiff up and down in a sexual manner, told her that he could picture her in a short skirt with high socks, similar to a schoolgirl outfit; and,

      (g)    While Plaintiff was stretching in the office gym, along with her two (2) female direct reports), Mr. Marr yelled across the room that he could come over and stretch her out.

26.     In around November 2011, Defendant announced the promotions of several male director-level employees to the Vice President level.

27.     When Plaintiff complained to Mr. Foster that only male director-level employees were promoted, and no females, he told her that he agreed that the (male-only) promotions could be viewed as discriminatory, but that there was nothing that he could do regarding the same because he was not consulted about the promotions.  Mr. Foster also told Plaintiff that she was as good as any of the (male) employees who were promoted, and that he would help her to get promoted.

28.     In or about 2014, Plaintiff was the only female member of the four (4) person committee set up by Defendant and tasked with improving the efficiency of certain of Defendant's processes and procedures.  Although Plaintiff took the lead on much of the work that the committee completed, and was told that she was the best presenter on the committee, Mr. Foster told her that one of the male committee members was deemed the "leader" of the group by Defendant.  Shortly after the committee completed its tasks, that male employee, who, like Plaintiff, was a director-level employee, was promoted into a Vice President position.

29.     In around June 2014, at the time of Plaintiff's five (5) year anniversary with Defendant, she requested an additional week of vacation time, pursuant to Defendant's Policies and Procedures Manual, which stated that employees were to be awarded an additional week of vacation upon reaching five (5) years of employment.

30.    In response to Plaintiff's request, Mr. Foster told her that she could not receive the additional time because she was capped at the three (3) weeks of vacation that she received at the commencement of her employment.  When Plaintiff said that she was aware of male director-level employees who were given more vacation time than she was, Mr. Foster said that he would see what he could do.

31.    After Mr. Foster failed to follow up with Plaintiff regarding her vacation time request, she asked him about the same.  He then told her that she was not entitled to any additional vacation time until she had been employed with Defendant for ten (10) years.  Mr. Foster did not respond to Plaintiff's expressed belief that male directors were given more vacation time than she was.

32.    In or around February 2015, Mr. Foster told Plaintiff that, as a result of Defendant's Strategic Workforce Planning Initiative, Defendant determined that the only Vice Presidents going forward would come from departments deemed to be "strategic," including Accounting; Facility Services; and, Marketing. All of those departments were led by male employees, and generally dominated by male director-level employees.  Mr. Foster told Plaintiff that, as a result of Defendant's determination, she would never be promoted to the Vice President level because she worked in a "service" department, and not a "strategic" department, and Defendant did not need a Vice President in the Legal Department.  When Plaintiff asked Mr. Foster why the Legal Department was considered a "service" group, and the others referenced were deemed to be "strategic," he failed to explain the same.

8

33.     Plaintiff complained to Mr. Foster that it was very difficult to break the "glass ceiling" and join the "boys' club" at Defendant.  She also complained that Defendant's "services"/"strategic" distinction would result in a Vice President group dominated by males, as the "strategic" departments were generally dominated by male director-level employees.

34.     Mr. Foster told Plaintiff that he was personally offended by her complaints.  Plaintiff then complained that the Senior Management team was almost exclusively male and Defendant focused on promoting its male employees, not women.

35.     Mr. Foster told Plaintiff that she wanted to be promoted just because she is a woman.  Plaintiff told Mr. Foster that she wanted to be promoted because she deserved it, and that there was a clear bias against women at Defendant.

36.     Plaintiff also told Mr. Foster that the Senior Management team (which was, at that time, comprised of almost all males) needed to make more of an effort to get to know and to develop the company's female directors and managers, as they did with the male employees.

37.     In that same discussion, Mr. Foster told Plaintiff that one (1) of her male peers, another director-level employee, was being promoted to Senior Director.  That employee was the only other director-level employee, other than Plaintiff, who was given the highest rating possible on Defendant' prior year's talent review, an evaluation that incorporated feedback from employees' supervisors and colleagues.

9

38.     When Plaintiff asked why that male employee was being promoted when she had received the same rating as he did on the talent review, Mr. Foster told her, for the first time, that he had changed her rating from the previous year's talent review to a lower rating because he had been "too generous" in his prior assessment.

39.     After Plaintiff's complaints regarding Defendant's sex discriminatory conduct and biases referenced above, Mr. Foster told her that she was going to "burn bridges" at Defendant if she did not "change [her] attitude" and stop complaining about her not being promoted because of her sex.

40.     On or about February 6, 2015, Mr. Foster gave Plaintiff her performance review which included unjustified criticisms of her performance, some of which Mr. Foster acknowledged lacked any factual basis.

41.     During the review meeting, Mr. Foster told Plaintiff that she might miss out on future opportunities at Defendant if she continued to have an "attitude" about the talent review results and the Strategic Workforce Planning Initiative.  Plaintiff understood Mr. Foster to be telling her that she was not going to have a future at Defendant if she continued to complain regarding their sex discriminatory conduct and biases.  She told Mr. Foster that Defendant's policies and practices made it unlikely that they would ever promote a female employee into a Vice President position.

42.     Following Plaintiff's complaints regarding Defendant's sex discriminatory conduct, members of the (as of this time, all-male) Senior Management team began communicating and interacting with her less than they

had previously.

43.    Following Plaintiff's complaints regarding Defendant's sex discriminatory conduct, Mr. Foster began communicating and interacting with her less than he had previously.  He also told Plaintiff that a temporary employee whom she had been supervising, and who was being hired on a full-time basis, would no longer report to her.

44.    On or about April 8, 2015, Plaintiff worked from home, as she had done so in the past, and, to her knowledge, as several other employees, including Mr. Foster, did.  Mr. Foster then told her, for the first time, that she was no longer allowed to work from home going forward.

45.    On or about April 14, 2015, Mr. Foster told Plaintiff that he heard about an open position with another company, that it might be a good opportunity for her "considering that we are not getting along well," and to let him know if she wanted to apply for the same.

46.    On or about May 15, 2015, Mr. Foster told Plaintiff that he alone would attend an annual meeting for an industry association of which Defendant was a part.  Mr. Foster and Plaintiff had both attended that meeting for the past few years, and the issues discussed at the meeting were part of Plaintiff's responsibilities.

47.    In or around May 2015, Defendant terminated the employment of a black, female employee.  Mr. Foster subsequently told Plaintiff that, following the employee's termination, she filed a complaint alleging that Defendant treated its female employees differently than its male employees, and that she had it worse

because she was one (1) of the only black women at the company.  Mr. Foster also told Plaintiff that the employee's complaint included that he engaged in discriminatory conduct.  Mr. Foster informed Plaintiff that Defendant retained an investigator to conduct an investigation regarding that employee's allegations of discrimination.

48.     On or about May 26, 2015, at Defendant's instruction, Plaintiff met with Defendant's investigator regarding his investigation into the employee's complaints of discrimination.  During the meeting, Plaintiff advised the investigator that she believed that the employee had been treated differently based on her race.  Plaintiff also stated that the company had a diversity problem regarding both race and sex, that there was an underrepresentation of female and non-white employees at the director-level and above, and that she had been, and continued to be, subjected to sex discrimination by Defendant.

49.     Defendant's investigator prepared an affidavit for Plaintiff to sign regarding her meeting with him which referenced Plaintiff's complaint regarding race and sex discrimination.  Plaintiff told him that she had revisions to his draft affidavit, and would get back to him regarding the same.

50.     On or about June 10, 2015, Defendant terminated Plaintiff's employment.  Mr. Foster told her that, "obviously, you are not going to leave voluntarily, so I am firing you, for cause."

51.     Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including the hostile work environment to which Plaintiff was subjected, Defendant's failure to promote

Plaintiff into a Vice President position, and the termination of Plaintiff.

52.    Plaintiff's complaining of sex discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including the hostile work environment to which Plaintiff was subjected, Defendant's failure to promote Plaintiff into a Vice President position, and the termination of Plaintiff.

53.    Plaintiff's complaining of race discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including the termination of Plaintiff.

54.    Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

55.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

56.    The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

57.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and

suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

58.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

## COUNT I - Title VII

59.     Plaintiff incorporates herein by reference paragraphs 1 through 58 above, as if set forth herein in their entirety.

60.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

61.     Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

62.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

63.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

64.     No previous application has been made for the relief requested herein.

## COUNT II – Section 1981

65.     Plaintiff incorporates herein by reference paragraphs 1 through 64 above, as if set forth herein in their entirety.

66.     By committing the foregoing acts of retaliation based on Plaintiff's complaints of Defendant's race discriminatory conduct, Defendant has violated Section 1981.

67.     Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

68.     As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

69.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

70.     No previous application has been made for the relief requested herein.

## COUNT III - PHRA

71.     Plaintiff incorporates herein by reference paragraphs 1 through 70 above, as if set forth herein in their entirety.

72.     Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PHRA.

73.     Said violations were intentional and willful.

74.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

15

75.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

76.     No previous application has been made for the relief requested herein.

<strong><u>RELIEF</u></strong>

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of Section 1981;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     enjoining and permanently restraining the violations alleged herein;

(e)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(f)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(g)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(h)     awarding punitive damages to Plaintiff under Title VII;

(i)     awarding punitive damages to Plaintiff under Section 1981;

(j)     awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, and the PHRA;

(k)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(l)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

Dated: October 14, 2016          BY:     _____
                                         Stephen G. Console (36656)
                                         Caren N. Gurmankin (205900)
                                         1525 Locust St., 9th Floor
                                         Philadelphia, PA 19102
                                         (215) 545-7676
                                         (215) 565-2853 (fax)

                                         Attorneys for Plaintiff,
                                         Cheryl Di Bona

# EXHIBIT "1"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | Q  FEPA<br>X  EEOC | 530-2015-03562 |

| STATE OR LOCAL AGENCY:  Pennsylvania Human Relations Commission | | |
|---|---|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Cheryl Di Bona** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>████████ |
|---|---|

| STREET ADDRESS  ████ | CITY, STATE AND ZIP<br>North Wales, PA 19454 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**CubeSmart, L.P.** | NUMBER OF EMPLOYEES, MEMBERS<br>>15 | TELEPHONE (Include Area Code)<br>(215) 686-3013 |
|---|---|---|

| STREET ADDRESS<br>**Headquarters/Charging Party's Work Location**<br>5 Old Lancaster Road | CITY, STATE AND ZIP<br><br>Malvern, PA 19355 | COUNTY<br>Chester |
|---|---|---|

SEE ADDITIONAL RESPONDENTS ON NEXT PAGE

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  QColor  **X** Sex  QReligion  QNational Origin<br>   **X** Retaliation  Q Age  Q Disability  QOther *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*                    *Latest*  6/10/2016 |
|---|---|

**The Particulars Are:**

A.     1.     Relevant Work History

I was hired by Respondents on or about June 6, 2009 as Associate General Counsel. I was considered a Director-level employee. I reported to Jeff Foster (male), Chief Legal Officer and Senior Vice President. Mr. Foster reported to Christopher Marr (male), Chief Executive Officer.

I have consistently demonstrated excellent performance and dedication to Respondents. By way of example only, in 2013, I was told that I was one (1) of only two (2) Director-level employees to be awarded the highest rating, "Asset," on Respondents' 360 degree talent review that was conducted by the Senior Management team.

In February, 2014, I received a note from Mr. Marr informing me that I had been awarded a grant of restricted stock. In his note, Mr. Marr stated that, "You are part of a select group of five teammates at [Respondents] who the senior officer team decided to award equity to at this time. You live our CubeSmart values and we believe you have a bright future. This equity award is a tangible sign of our respect for your past performance and belief in your future."

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |
| Date: 7/15/15     *Charging Party (Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

**EEOC Charge of Discrimination**
**Page 2 of 7**

ADDITIONAL RESPONDENTS

CubeSmart Asset Management, LLC
5 Old Lancaster Road
Malvern, PA 19355

CubeSmart Management, LLC
5 Old Lancaster Road
Malvern, PA 19355

CubeSmart, a Maryland Real Estate Investment Trust
5 Old Lancaster Road
Malvern, PA 19355

CubeSmart, L.P.
5 Old Lancaster Road
Malvern, PA 19355

CubeSmart TRS, Inc.
5 Old Lancaster Road
Malvern, PA 19355



RECEIVED
15 JUL 15 PM 2: 44
EEOC PHILADELPHIA
DISTRICT OFFICE

RECEIVED
15 JUL 15 PM 2: 44
EEOC PHILADELPHIA
DISTRICT OFFICE

**EEOC Charge of Discrimination**
**Page 3 of 7**

2.    Harm Summary

I have been discriminated against because of my sex and retaliated against based on my complaints about Respondents' discriminatory conduct.  Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a)    In or around late November 2011, Respondents announced the promotions of several male Director-level employees to the Vice President level, and approximately three (3) male Vice Presidents to the Senior Vice President level;

(b)    I questioned Mr. Foster as to why only male Director-level employees were promoted while no female Director-level employees were selected for promotion;

(c)    In response to my complaint, Mr. Foster told me that he agreed that the promotions (of only male employees) could be viewed as discriminatory, but that there was nothing that he could do because he was not consulted regarding the same, and that these promotions were to reward the (male) employees' loyalty to Dean Jernigan (male), the former Chief Executive Officer (who retired in December 2013).  Mr. Foster also told me that I was as good as any of the (male) employees who were promoted, and that he would help me get promoted;

(d)    In or around April 2013, Respondents failed to promote the (female) Director of Human Resources, who had just recently given birth, into the Vice President position;

(e)    In or about 2014, I was the only female member of a four (4) person committee tasked with improving the efficiency of certain of Respondents' processes and procedures.  Although I was told that I was the best presenter on the committee and took the lead on much of the work that the committee did, Mr. Foster told me that one (1) of the other committee members, Brett Hoffman (male), was deemed the "leader" of the group.  Shortly after the committee completed its work, Mr. Hoffman, who had only been a Director-level employee since 2013, was promoted into the position of Divisional Vice President;

(f)    In or around June 2014, at the time of my five (5) year anniversary with Respondents, I requested that I be awarded an additional week of vacation time, as the Policies and Procedures Manual stated that employees receive an additional week of vacation after five (5) years.  Mr. Foster told me that I could not receive the additional time because I was capped at the three (3) weeks of vacation that I was given when I started working at Respondents.  When I said that I was aware of male Directors who had four (4) weeks of vacation time, Mr. Foster did not deny the same, but said only that he would see what he could do;

(g)    Several weeks later, I again asked Mr. Foster about the vacation time, as he had not gotten back to me.  He told me that he could not give me any additional vacation time until I had been employed for ten (10) years.  Mr. Foster never addressed why, to the best of my knowledge, male Directors were given four (4) weeks of vacation time, but I was not granted the same;

EEOC Charge of Discrimination
Page 4 of 7

(h)     On or about February 2, 2015, Mr. Foster informed me that, as a result of Respondents' Strategic Workforce Planning initiative, they determined that the only Vice Presidents going forward would come from the Accounting; Facility Services; and, Marketing departments, all of which were identified as "Strategic" groups, all of which were led by male employees, and all of which were generally dominated by male employees, especially male Directors.  Mr. Foster told me that  I would never be promoted to the Vice President level because I worked in a "Service" group, as opposed to a "Strategic" group, and Respondents did not see a need for a Vice President in the Legal Department.  When I asked Mr. Foster why Legal was deemed a "Service" group and Accounting, Facility Services and Marketing were not, he failed to explain the same;

(i)     I complained to Mr. Foster that it was very difficult to break the glass ceiling and join the boys' club at Respondents.  Mr. Foster told me that he was personally offended by my statement.  I told him that the Senior Management team was almost exclusively male and Respondents focused on promoting their male employees, not women;

(j)     Mr. Foster told me that I wanted to be promoted just because I am female.  I told Mr. Foster that I wanted to be promoted because I deserved it, and that there was a clear bias against women at Respondents;

(k)     I also told Mr. Foster that the (almost all-male) Senior Management team needed to make more of an effort to get to know and develop Respondents' female directors and managers, as they did with the male employees;

(l)     In that same discussion, Mr. Foster told me that Steve Gallagher (male), the only other Director, other than myself, who was given the highest rating of "Asset" in the 2013 360 talent review referenced above in Section A.1., was being promoted to Senior Director;

(m)     When I asked why the male employee who received an "Asset" rating was the only one being promoted (when I was the only other employee who had received an "Asset" rating), Mr. Foster told me, for the first time, that he had changed my rating from the previous year's 360 degree review from the highest category, "Asset," to a lower rating because he had been "too generous" in his prior assessment;

(n)     Around this time, Mr. Foster told me that I was going to "burn bridges" at Respondents if I did not "change [my] attitude" and "stop talking about [my] not being promoted because of [my] sex;

(o)     On or about February 6, 2015, Mr. Foster gave me my performance review which included unjustified criticisms of my performance, some of which Mr. Foster admitted lacked any factual basis.  During my review, Mr. Foster told me that I was "too nice" and that it would help my career if I got "angry" sometimes;

(p)     During my review meeting with Mr. Foster, he told me that I may miss out on future opportunities at Respondents if I continued to have an "attitude" about the 360 talent review results and the Strategic Workforce Planning initiative;

**EEOC Charge of Discrimination**
**Page 5 of 7**

(q)     I complained to Mr. Foster that the policies and practices of Respondents made it unlikely that a female employee would ever be promoted into a Vice President position at Respondents;

(r)     Following my February 2015 complaints to Mr. Foster, members of the (all-male) Senior Management team avoided interacting and communicating with me, as they normally did;

(s)     In or around early March 2015, upon Respondents' giving their approval to hire a temporary employee in the Legal Department on a full-time basis, Mr. Foster told me that the employee, who had been reporting to me, would now report to him, contrary to his prior representation that the new employee would continue to report directly to me once she was hired full-time;

(t)     Mr. Foster began interacting and communicating with me less than he did previously;

(u)     On or about April 8, 2015, I worked from home. I had done so in the past, as have, to the best of my knowledge, several male employees, including Mr. Foster;

(v)     Mr. Foster subsequently emailed me and said, for the first time, that going forward, I was not allowed to work from home;

(w)     On or about April 14, 2015, Mr. Foster told me that he heard about an open position with another organization and that it might be a good opportunity for me "considering that we are not getting along well" and to let him know if I wanted to apply;

(x)     On May 15, 2015, Mr. Foster informed me that he alone would attend the annual meeting for an association in which Respondents, along with other companies in the industry, participated. For the past approximately three (3) years, Mr. Foster and I had attended that meeting together, as the issues discussed at that meeting were part of my primary responsibilities at Respondents;

(y)     In or around mid-May 2015, a black, female employee was terminated. Mr. Foster subsequently told me that that employee had complained that women at Respondents were treated differently than the male employees and that she had it even worse because she was one (1) of the only black women at the company. Mr. Foster also told me that the employee had complained specifically about his discriminatory conduct. Mr. Foster said that Respondents retained an outside attorney, Charles Curley, to conduct an investigation regarding that employee's allegations of discrimination;

(z)     On or about May 26, 2015, I met with Mr. Curley regarding Respondents' investigation into the former employee's complaints of discrimination. During the meeting, I told Mr. Curley that I believed that the black employee had been treated differently based on her race;

**EEOC Charge of Discrimination**
**Page 6 of 7**

(aa)    I also told Mr. Curley that Respondents had a diversity problem regarding both race and sex, and that there was an underrepresentation of female and/or non-white employees at the Director level and above.  I also complained to Mr. Curley regarding the sex discriminatory conduct to which I had been, and continued to be, subjected;

(bb)    On or about June 10, 2015, Respondents terminated my employment.  Mr. Foster told me only that, "obviously you are not going to leave voluntarily, so I am firing you, for cause";

(cc)    Respondents' demographics evidenced a bias against females.  Evidence of this includes, but is not limited to, the following

        (1)  As of the time of my termination, the Senior Management team was entirely male;

        (2)  Out of the five (5) executives who reported directly to Mr. Marr, all were male;

        (3)  Out of three (3) Senior Vice Presidents, all were male; and,

        (4)  As of the time of my termination, out of approximately nine (9) Vice Presidents, all were male.

(dd)    Along with that which is set forth above, Respondent's comments and conduct evidenced a bias against female employees.  Evidence of this includes, but is not limited to, the following:

        (1)  Upon information and belief, Mr. Marr told a female director-level employee that he was surprised that she worked so well with Tim Martin (male), Chief Financial Officer, because of Mr. Martin's negative view of women;

        (2)  Upon information and belief, Mr. Marr relayed to another female employee that Mr. Martin had a negative view of women;

        (3)  Mr. Foster said that Mr. Jernigan, the former  Chief Executive Officer, could not keep an assistant because he liked to hire young, attractive women that did not know anything;

        (4)  A male Vice President told me that I would look nice in a "school girl" outfit, which he described as a short skirt and high socks;

        (5)  Mr. Foster said that a female manager's job was to wear a tight dress and look pretty at trade shows to get business for Respondents;

        (6)  Upon information and belief, a female employee made a complaint about Joel Keaton (male), Senior Vice President, Operations, sexually harassing her.  To the best of my knowledge, Respondents, including Mr. Foster, were aware of the same but no one reprimanded or counseled Mr. Keaton regarding the issue;

        (7)  When I was stretching in the office gym (along with my two (2) female direct reports and our female trainer), Mr. Marr yelled across the room that he could come stretch me out; and,

**EEOC Charge of Discrimination**
**Page 7 of 7**

(8)   During a meeting I was having with other employees, Mr. Carr stopped by and started discussing celebrities.  He commented about the appearance of an actress, Cameron Diaz, and said that she was "ridden hard and put away wet."

B.   1.   Respondents' Stated Reasons

(a)   Respondents have not offered any explanation for the hostile work environment based on my sex and my complaints about the discriminatory treatment to which I have been subjected;

(b)   Respondents have not offered any explanation for failing to promote me into a Vice President position;

(c)   Respondents have not offered any explanation or failing to promote me into a Senior Director position;

(d)   Respondents have not offered any explanation for failing to take corrective and/or remedial action regarding my complaints of discrimination;

(e)   Respondents have not offered any explanation for terminating my employment;

(f)   Respondent has not offered any explanation for its pattern and practice of discriminating against female employees, including subjecting them to a hostile work environment.

C.   1.   Statutes and Basis for Allegations

I believe that Respondent has discriminated against me and subjected me to a hostile work environment based on my sex and retaliated against me based on my complaints about sex discrimination and race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), as set forth herein. Defendants' retaliatory conduct was also in violation of 42 U.S.C. §1981 ("Section 1981").

D.   1.   Class Harm

I bring this charge on a class basis as a result of the pattern and practice of sex discrimination and a hostile work environment existing at Respondents.  Accordingly, I file this as a class charge on behalf of all female employees of Respondents that have been subjected to discrimination and a hostile work environment while employed at Respondents.

**INFORMATION FOR COMPLAINANTS & ELECTION OPTION**
**TO DUAL FILE WITH THE**
**PENNSYLVANIA HUMAN RELATIONS COMMISSION**

**Cheryl Di Bona v. CubeSmart L.P. et al.**

EEOC No. _530-2015- 0 3562_



You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

_X_  I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

_X_ *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X _____     7|15|15
    Signature and Date

____  I do not want my charge dual filed with PHRC

_____
Signature and Date

# EXHIBIT "2"

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  Cheryl DiBona<br><br>North Wales, PA 19454 | From:  Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

☐    On behalf of person(s) aggrieved whose identity is
      CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2015-03562 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]    More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_Spencer H. Lewis, Jr.,_
**District Director**

8/17/16
(Date Mailed)

cc:    Christopher Marr, Chief Executive Officer
       CUBESMART
       5 Old Lancaster Road
       Malvern, PA 19355

       Caren N. Gurmankin, Esq.
       CONSOLE LAW OFFICES
       1525 Locust Street, 9th Floor
       Philadelphia, PA 19102